**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
Southern Division

NATHANIAL SMITH, SR., #422-407,

    Plaintiff,

v.

D.P.S.C.S., *et al.*,

    Defendants.

Case No.: GJH-16-4003

**MEMORANDUM OPINION**

Plaintiff Nathanial Smith, Sr. brings this *pro se* action against Correctional Officers at the Maryland Correctional Training Center ("MCTC"), including C.O. II Brian Strait and C.O. II Kevin R. Tew (collectively, "Defendants"),[1] alleging that Defendants failed to protect Plaintiff from an assault on the evening of January 11, 2015. *See* ECF Nos. 1; 28. Presently pending before the Court is Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, ECF No. 24, and Plaintiff's Motion for Summary Judgment, construed as a response in opposition to Defendants' Motion, ECF No. 29. No hearing is necessary. Loc. R. 105.6 (D. Md. 2016). For the following reasons, Defendants' Motion, construed as a Motion for Summary Judgment, is granted.

**I.    BACKGROUND**

On January 11, 2015 at approximately 6:00 p.m., Plaintiff was walking back to his housing unit from the dinner hall along with a group of other inmates. ECF No. 24-2 at 5

---

[1] Plaintiff also names Senior Shift Supervisor Capt. J. Whitemen and an unnamed Department of Public Safety Correctional Services Employee as Defendants; however, Plaintiff's allegations are focuses on Tew and Strait. ECF No. 19.

1

(Serious Incident Report MCTC # 15-004).² At some point along the way, he was cut on the neck by an unknown assailant. *Id.* Plaintiff then approached a correctional officer who was in the area near Yard Post 4 and stated, "This shit is crazy." *Id.* at 7. Upon noticing that Plaintiff had a cut along the right side of his neck, the officer immediately escorted him to the dispensary for medical treatment. *Id.* While being escorted to the dispensary, Plaintiff told the officer that he did not know who had cut him. *Id.*

A nurse at the dispensary observed that Plaintiff had a 5-inch laceration along his right jaw line. *Id.* at 8. Plaintiff appeared "alert and oriented, speaking in sentences, in mild distress due to event happening, appears to be in little discomfort, vital signs stable." *Id.* Medical staff did not consider Plaintiff's injury to be life-threatening, but given the length of the laceration and its location, Plaintiff was transported to a local hospital for stitches. *Id.* at 5.

Defendant Tew was on duty at MCTC on January 11, 2015, working the 4:00 p.m. to 12:00 a.m. shift assigned to Yard Post 2. *See* ECF No. 24-3 ¶ 3. When Tew's shift began at 4:00 p.m., he was stationed at Yard Post 2 monitoring inmate movement as inmates went to and from their housing units to the dinner hall. *Id.* ¶ 4. Tew was standing approximately 15 yards from the paved center walk the inmates used going to and from the dinner hall. *Id.* According to Tew, there was a steady flow of hundreds of inmates going to and from the dinner hall walking abreast on the center walk approximately five to six persons across. *Id.* at ¶ 5. The inmate movement for their dinner meal went from approximately 4:10 p.m. to 6:15 p.m. *Id.* Tew did not witness any assault while he monitored inmate movement. *Id.* at ¶ 6. Moreover, prior to the incident, Tew had no knowledge that Plaintiff might be the target of assault by another inmate. *Id.* Plaintiff never informed Tew of any potential threat of harm to himself by another inmate. *Id.*

---

² Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

2

Tew conducted a search of the Yard Post 2 area at about 6:30 p.m. and recovered a homemade weapon approximately 30 yard past where he was stationed during inmate movement. ECF No. 24-2 at 14; ECF No. 24-3 ¶ 7. The weapon was made from a razor blade clipped to a broken pen, which Tew placed in the contraband locker. ECF No. 24-2 at 14. Photographs of Plaintiff's injuries as well as the homemade weapon believed to be used in the assault were recorded by correctional staff. *Id.* at 18–20.

Defendant Strait was on duty at MCTC on January 11, 2015, working the 4:00 p.m. to 12:00 a.m. shift assigned to Yard Post 1. ECF No. 24-4 at ¶ 3. When Strait's shift began at 4:00 p.m., he was stationed at Yard Post 1, which is the Yard Post located nearest to the dinner hall on the opposite side of the paved center walk from Yard Post 2. *Id.* ¶ 4. Strait monitored inmate movement to and from the housing units to the dinner hall. *Id.* He was standing approximately 15 yards from the center walk. *Id.* Strait had no knowledge that Plaintiff might be the target of assault by another inmate. *Id.* Plaintiff never informed Strait of any potential threat of harm to himself by another inmate. *Id.*

In his Complaint, Plaintiff alleges that Defendants Tew and Strait were not at their assigned posts, which Plaintiffs claims constitutes negligence, misconduct, and deliberate indifference pursuant to 42 U.S.C. § 1983. *See* ECF Nos. 1; 28.

## II. STANDARD OF REVIEW

Defendants' motion is styled as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Rule 56. If the Court considers matter outside the pleadings, as the Court does here, the Court must treat a motion to dismiss as one for summary judgment. Fed. R. Civ. P. 12(d). When the Court treats a motion to dismiss as a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity

3

to present all the material that is pertinent to the motion." *Id.* It is obvious that when the moving party styles its motion as a motion to dismiss for failure to state a claim or, alternatively, motion for summary judgment, as is the case here, and the nonmoving party attaches exhibits to its opposition, the nonmoving party is aware that materials outside the pleadings are before the Court, and the Court can treat the motion as one for summary judgment. *See Laughlin v. Metropolitan Wash. Airports. Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). Plaintiff has filed a response to Defendants' Motion, attaching additional materials not found within his Complaint. ECF No. 29.

Summary judgment is appropriate if "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c), show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv., Co. v. Cameo Props.,* 810 F.2d 1282, 1286 (4th Cir. 1987). If the moving party demonstrates that there is no evidence to support the non-moving party's case, the burden shifts to the non-moving party to identify specific facts showing that there is a genuine issue for trial. *See Celotex,* 477 U.S. at 322–23. A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass,* 242 F.3d 179, 183 (4th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). A dispute of material fact is only genuine if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. *Id.* at 248. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the

4

building of one inference upon another." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir. 1985). The Court may only rely on facts supported in the record, not simply assertions in the pleadings, in order to fulfill its "affirmative obligation . . . to prevent 'factually unsupported claims or defenses' from proceeding to trial." *Felty v., Grave-Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex,* 477 U.S. at 324–25). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255.

### III. DISCUSSION

Defendants argue that Plaintiff's claim does not rise to the level of deliberate indifference cognizable under § 1983. ECF No. 24-1. "The Eighth Amendment's prohibition on 'cruel and unusual punishments' imposes certain basic duties on prison officials." *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Those duties "include maintaining humane conditions of confinement, including the provision of adequate medical care and . . . reasonable measures to guarantee the safety of the inmates." *Id.* (quoting *Farmer*, 511 U.S. at 832). "[N]ot every injury suffered by a prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (citation omitted). A two-part inquiry that includes both an objective and a subjective component must be satisfied before liability is established. *Raynor*, 817 F.3d at 127.

Objectively, a prisoner "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury." *Danser v. Stansberry*, 772 F.3d 340, 346 (4th Cir. 2014) (citation omitted). Subjectively, a plaintiff must establish that the prison official involved had "a sufficiently culpable state of mind" amounting to "deliberate indifference to

5

inmate health or safety." *Farmer*, 511 U.S. at 834 (citations omitted). A prison official has such deliberate indifference if the official has actual knowledge of, and yet disregards, an excessive risk to the prisoner's health or safety. *Id.* at 837. The official must be aware of facts from which an "inference could be drawn that a substantial risk of serious harm exists," actually draw that inference, then disregard the risk. *Id*. A plaintiff may "prove an official's actual knowledge of a substantial risk in the usual ways, including inference from circumstantial evidence" so that "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Raynor*, 817 F.3d at 128 (citation omitted).

Here, even if the evidence were sufficient to satisfy the objective inquiry, Plaintiff fails to satisfy the subjective component. Plaintiff alleges that Defendants were negligent because they were not at their assigned posts during the incident. His claim of Defendants' alleged negligence, however, does not rise to the level of deliberate indifference. Specifically, Plaintiff has not shown that Defendants knew of any risk to his safety, nor has he provided proof that Defendants were aware of facts from which an inference could be drawn that a substantial risk of serious harm existed. Defendants provided declarations stating that they were performing their assigned duties at their respective yard posts on the night of the incident. Furthermore, Defendants stated that they had no prior knowledge that Plaintiff was at risk of bodily harm by another inmate.

Beyond cursory allegations in his pleadings, Plaintiff has offered no evidence to support a claim of deliberate indifference to his safety.[3] Where Defendants' evidence is unopposed, Plaintiff has not established a genuine issue of material fact whether Defendants were aware of and disregarded a substantial risk to his safety and thus failed to protect him or provided

---

[3] Plaintiff sent a newspaper article regarding a similar assault on another inmate at MCTC, *see* ECF No. 29; however, it does not address the subjective inquiry regarding Defendants' liability in this case. To the extent that Plaintiff attempts to allege a claim of an unconstitutional pattern or practice (*i.e.,* a *Monell* claim), Plaintiff has not suggested that MCTC had actual or constructive notice that its yard monitoring methods were inadequate. *See Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 691 (1978).

unconstitutional conditions of confinement. Accordingly, the Court will grant summary judgment in Defendants' favor.[4]

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion, ECF No. 24, construed as a Motion for Summary Judgment, shall be granted. Plaintiff's Motion for Summary Judgment, ECF No. 29, shall be denied. A separate Order follows.

Dated: August 23, 2018                    /s/
                                          GEORGE J. HAZEL
                                          United States District Judge

---

[4] In light of the Court's ruling, an analysis of Defendants' qualified immunity argument is not necessary. To the extent that Plaintiff also seeks to bring a claim under state law, the Court declines to retain supplemental jurisdiction, and such claims are dismissed without prejudice. *See Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).